UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WENDY NELSEN,
                Plaintiff,

v.                                            Case No. 16-cv-1679-pp

DR. KELLY O'BRIEN, WDOC INSURANCE COMPANY,
SCOTT WALKER, JOHN LISTNER, JAMES GREEN/GREER,
DR. DAVID BURNETT, NP LEMMENS, and
WARDEN DEANNE SCHAUB[1],

                Defendants.

---

**DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 7) AND SCREENING THE COMPLAINT (DKT. NO. 1)**

---

The plaintiff was a Wisconsin state prisoner at the time she filed her complaint.[2] Representing herself, the plaintiff filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated her civil rights at the Taycheedah Correctional Institution ("TCI"). Dkt. No. 1. This order resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee and screens the plaintiff's complaint.

**I.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 7)**

---

[1] The court has corrected the case caption to reflect that the Warden at Taycheedah Correctional Institution at the time the plaintiff filed her complaint was Deanne Schaub, not Carolyn Schuab as named by the plaintiff.

[2] The Wisconsin Department of Corrections' Inmate Locator web site indicates that the plaintiff was released on extended supervision from the Robert E. Ellsworth Correctional Center on March 27, 2018.
https://appsdoc.wi.gov/lop/detail.do.

1

The Prison Litigation Reform Act ("PLRA") applies to this case, because the plaintiff was incarcerated when she filed the complaint. 28 U.S.C. §1915. The law allows an incarcerated plaintiff to proceed with a lawsuit in federal court without prepaying the civil case filing fee, as long as she meets certain conditions. Id. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from her prisoner account. Id.

The court issued an order, requiring the plaintiff to pay an initial partial filing fee of $23.49. Dkt. No. 5. The court received that payment from the plaintiff on February 21, 2017. Therefore, the court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee.

The court allows plaintiff who are in custody to pay the balance of their $350 filing fee over time, out of their prisoner accounts. Because the plaintiff has been out of custody for a couple of months, the court will allow her to pay the $326.51 balance of her filing fee as she is able.

## II.   SCREENING OF THE PLAINTIFF'S COMPLAINT

### A.   Standard for Screening Complaints

The PLRA requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court may dismiss a case, or part of it, if the claims alleged are "frivolous or malicious," fail to state a claim

upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [she] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See

Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B. Facts Alleged in the Complaint

The plaintiff was an inmate at TCI. Dkt. No. 1 at 1. Defendant Kelly O'Brien is a doctor at TCI, id. at 2; defendant Scott Walker is governor of Wisconsin, id. at 3; defendant WDOC Insurance Company is, according to the plaintiff, the company that insures employees of the Wisconsin Department of Corrections, id. at 2; defendant John Listscher[3] is secretary of the Department of Corrections ("DOC") id., at 3; defendant David Burnett, M.D. is medical director for the Bureau of Health Services ("BHS"), id.; defendant N.P. Lemmens is a nurse practitioner at TCI, id.; and the complaint asserts that defendant Deanne Schaub was the warden at TCI, id. at 4.[4]

In 2006, inmates at TCI brought a class action lawsuit against TCI for insufficient medical care. Id. at 5. The plaintiff says that the case settled in 2015, and that TCI staff "cleaned up" their act only long enough to "get the Judge Randa[5] and the ACLU off its case." Id. The plaintiff alleges that "[n]ow, TCI is right back to wear [sic] it was in 2006 . . . ." Id.

---

[3] The plaintiff refers to this defendant as "John Listner," but the court assumes that this is an unintentional misspelling of Secretary Litscher's last name.

[4] The plaintiff lists a "James Green," or "James Greer" in the caption of her complaint. Dkt. No. 1 at 1. She does not mention him anywhere else—does not explain who he is, or how he is related to her claims. The court will not allow the plaintiff to proceed against this person.

[5] Presumably, the plaintiff is referring to United States District Judge Rudolph T. Randa, who served on the district court for the Eastern District of Wisconsin from 1992 until 2016.

The plaintiff alleges that she "was given flonaise," and she says that she was "being given Hydroxizen, 4 times a day which is an antihstimic." Id. (The court believes the plaintiff may be referring to FLONASE, an over-the-counter allergy medicine, see https://www.flonase.com, and hydroxyzine, an antihistamine, see https://www.medicinenet.com/hydroxyzine/article.htm.) The plaintiff alleges that she has a hole in her septum—the bone and cartilage wall that separates the two nostrils in the nose. Id. She says the hole has tripled in size, to a quarter inch in diameter, and has caused her to lose the abilities to smell and to taste. Id. She says that she has severe sleeping problems—she has to breathe through her mouth because she has "constant blood chunks being formed throughout the day and night time." Id. She describes how she has to blow her nose at least once an hour, which allows her to breathe for fifteen to twenty minutes at a time. Id. She indicates that on several occasions, when she blew her nose, blood vessels in one of her eyes broke, turning the entire eye red for ten to fifteen days at a time. Id.

The plaintiff also says that she was on prednisone (an oral steroid, see https://www.medicinenet.com/prednisone/article.htm) "for the last years" that she was at Taycheedah. Id. at 6. This has caused severe mood swings, and thinning of her skin and veins (which she indicates causes her to bruise easily, and to blow out blood veins when IVs are required). Id. It also causes severe acid reflux; the plaintiff says she has had to have stomach, diaphragm and esophagus surgeries. Id. The plaintiff indicates that the acid reflux has worsened, and that now inmates are allowed only 20-30 mg. tablets of

Pantoprazole; she says this equals one 20-mg tablet every other day, and caused her acid reflux to "escalate." Id. She says she has uterine fibroids, which required her to have a hysterectomy. Id.

The plaintiff asserts that her mouth is dry all the time, which has caused tooth decay. Id. The plaintiff says that no one ever told her about "the health care problems of long term steroid use;" she indicates that she feels like she has been forced into an experiment on these effects. Id. The plaintiff also explains that her mother is afraid that the plaintiff will die in custody. Id.

The plaintiff alleges that defendant O'Brien kept the plaintiff on constant usage" of prednisone, as well as "usage of [corticosteroids] nasal spray." Id. at 1. She alleges that her "severe nasal permanent damage" is defendant O'Brien's fault because of the constant use of the steroids. Id. The plaintiff explains that Dr. O'Brien is leaving TCI, and that defendant Lemmens "and other N.P." will be taking over medical care at the institution. Id. at 7. She feels that O'Brien betrayed her trust, and that O'Brien's leaving and having the nurse practitioners take over continues to betray her. Id. at 6-7.

The plaintiff seeks "restitution" and monetary damages for all the pain and suffering she has suffered and will continue to suffer for the rest of her life. Id. at 7.

    C.    Analysis

To state a claim under 42 U.S.C. §1983, the plaintiff must allege that: 1) she was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was committed by a person or persons acting

6

under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)).

        1.      Defendant WDOC Insurance Company

One of the defendants the plaintiff has sued is WDOC Insurance Company. The court does not know if there is a company by that name, but if there is, it is (a) a company, not a person, and (b) a private company, not a part of the government.

Section 1983 allows plaintiffs to sue any "person" who, "under color of" state law, violates the plaintiff's rights under the United States Constitution or its laws. A corporation is not a "person," and the Seventh Circuit Court of Appeals has held that a private corporation—even one that "has contracted to provide essential government services"—"cannot be held liable under §1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself." Shields v. Ill. Dept. of Corrections, 746 F.3d 782, 789 (7th Cir. 2014) (citing, *e.g.*, Iskander v. Vill. of Forest Park, 690 F.2d 126, 128 (7th Cir. 1982)). The plaintiff names the WDOC Insurance Company as a defendant, but does not allege that it did anything to her. Because she has not alleged that the violation of her constitutional rights was committed by an unconstitutional policy or custom of the WDOC Insurance Company, the court must dismiss that company as a defendant.

2. Defendants Walker, Litscher, Burnett and Schaub

Similarly, the plaintiff names Scott Walker, John Litscher, David Burnett and Deanne Schaub in the list of defendants, but she does not allege that any of them directly violated her constitutional rights. She alleges that all four of these individuals had some sort of supervisory responsibility—Walker had responsibility for supervising the conduct of executive and ministerial officers; Litscher had the responsibility for safely and securely administering DOC institutions; Burnett had the responsibility for supervising those who provided medical services to inmates at TCI; and Deanne Schaub was responsible for the safety and care of all inmates at TCI. The plaintiff is correct on all these points.

In order for a supervisor to be liable for violating someone's constitutional rights under §1983, however, that supervisor must be "personally responsible for the deprivation of the constitutional right." Matthews v. City of E. St. Louis, 675 F.3d 703, 708 (7th Cir. 2012) (quoting Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001)). To show that a supervisor was "personally responsible" for depriving the plaintiff of a constitutional right, the plaintiff must show that the supervisor "[knew] about the conduct and facilitat[ed] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what [the supervisor] might see." Id. (quoting Jones v. City of Chi., 856 F.2d 985, 992-93 (7th Cir. 1988)).

The plaintiff has not alleged that Walker, Litscher, Burnett or Schaub knew what medication the plaintiff was taking. She has not alleged that they

8

knew about the hole in her septum, or about all of the physical problems she was suffering. She has alleged only that they were supervisors, and were responsible for the people who worked under them. This is not enough to prove liability against a supervisor under §1983. The court will dismiss Walker, Litscher, Burnett and Schaub as defendants.

### 3. Defendant Kelly O'Brien

The Eighth Amendment protects prisoners from a lack of medical care that "may result in pain and suffering which no one suggests would serve any penological purpose." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015) (quoting Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 828 (7th Cir. 2009)). For a prisoner to state a claim for deficient medical care under the Eighth Amendment, she must "allege an objectively serious medical condition and an official's deliberate indifference to that condition." Id. (citing Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011)). A medical condition is serious if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). A prison official is "deliberately indifferent" to such a condition when he or she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The plaintiff says a couple of times in her complaint that she is suing for "malpractice." The Seventh Circuit has held that "[d]eliberate indifference is not

medical malpractice . . . ." McGee v. Adams, 721 F.3d 474, 481 (7th Cir. 2013) (quoting Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008)). Deliberate indifference requires "more than negligence and approaches intentional wrongdoing." Id. at 480 (quoting Johnson v. Snyder, 444 F.3d 579, 585 (7th Cir. 2006)). To show that a medical professional acting in his or her medical capacity was deliberately indifferent, the plaintiff must show that the professional's treating decisions were "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 481 (quoting Elyea, 631 F.3d at 857).

The court will not allow the plaintiff to proceed against O'Brien on a medical malpractice claim. But the plaintiff has alleged sufficient facts to raise a question as to whether O'Brien's treatment of her constituted such a substantial departure from accepted medical judgment that O'Brien didn't base her treating decisions on such judgment. The plaintiff describes having a hole in her septum that grew to a quarter inch in diameter, and yet indicates that O'Brien continued to give her the nasal spray and antihistamine. She describes having terrible side effects from steroids, and alleges that O'Brien should have been aware that such side effects were possible, but that she continued to give the plaintiff Prednisone. Accepting these facts as true—as the court must at the screening stage—the court concludes that the plaintiff has stated sufficient facts to allow her to proceed on a deliberate indifference claim against O'Brien.

4. Defendant N.P. Lemmens

Finally, the plaintiff has not stated a claim against Nurse Practitioner Lemmens. All the plaintiff says is that Lemmens is going to take over medical care at TCI when O'Brien leaves, and that she feels that this is a betrayal. She has not alleged that Lemmens did anything to violate her constitutional rights. The court will dismiss Lemmens as a defendant.

## III. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 7. The court **ORDERS** the plaintiff to pay the $326.51 balance of her filing fee to the clerk of court as she is able. The plaintiff should make payments payable to "Clerk, U.S. District Court." She should send them to Clerk of Court, United States District Court, 517 East Wisconsin Avenue, Room 362, Milwaukee, Wisconsin 53202.

The court **ORDERS** that under an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order are being electronically sent to the Wisconsin Department of Justice for service on Dr. Kelly O'Brien. O'Brien shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that WDOC Insurance Company, Scott Walker, John Listner, James Green/Greer, Dr. David Burnett, N.P. Lemmens, and Deanne Schaub are **DISMISSED** as defendants.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case. Because the clerk will electronically scan and enter each filing on the docket upon receipt, the plaintiff need not mail copies to the defendant. The defendant will be served electronically through the court's electronic case filing system. The plaintiff should retain a personal copy of each document filed with the court.

The court advises the plaintiff that if she does not file documents or take court-ordered actions by the deadlines the court sets, the court could dismiss her case for failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 10th day of May, 2018.

        **BY THE COURT:**

        _____
        **HON. PAMELA PEPPER**
        **United States District Judge**